**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

```
JOE CRENSHAW,                     *
                                  *
     Plaintiff,                   *
                                  *
vs.                               *   CIVIL ACTION NO. 21-00549-B
                                  *
KILOLO KIJAKAZI,                  *
Acting Commissioner of           *
Social Security,                  *
                                  *
     Defendant.                   *
```

<u>ORDER</u>

Plaintiff Joe Crenshaw ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.*  On April 6, 2022, the parties consented to have the undersigned Magistrate Judge conduct any and all proceedings in this case.  (Doc. 14).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  (Doc. 15).  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED.**

I.   **Procedural History**[1]

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on November 12, 2019. (Doc. 13 at 173-76).  He alleged disability beginning on October 31, 2018, based on depression, chronic back pain, elbow/shoulder pain, knee pain, vision/eye issues, and anxiety.  (Id. at 176, 200).  Plaintiff's application was denied at the initial stage. (Id. at 84, 95, 97, 110).  Upon timely request, Plaintiff was granted a hearing before an Administrative Law Judge ("ALJ"), which was held on January 21, 2021.  (Id. at 36-69, 125).  Plaintiff, who was represented by counsel, participated in the hearing by telephone and provided testimony relating to his claims.  (Id. at 38-59).  A vocational expert ("VE") also testified at the hearing. (Id. at 60-67).  On March 3, 2021, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 20-31). The Appeals Council denied Plaintiff's request for review on October 29, 2021; therefore, the ALJ's decision became the final decision of the Commissioner.  (Id. at 5).

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action.  (Doc. 1).  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. § 405(g).

---

[1] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF.

## II.  <u>Issues on Appeal</u>

1. **Whether the ALJ erred in failing to list Plaintiff's herniated lumbar disc and alleged radiculopathy as a discrete severe impairment at step two of the sequential evaluation process?**

2. **Whether the ALJ's evaluation of the opinions of Plaintiff's treating orthopedist and the ALJ's RFC assessment are supported by substantial evidence?**

3. **Whether the ALJ erred in her evaluation of Plaintiff's subjective complaints?**

## III. <u>Factual Background</u>

Plaintiff was forty-three years of age at the time of his hearing before the ALJ.  (Doc. 13 at 43).  He lives in a house with his mother and four of his children, who were teenagers at the time of the hearing.  (<u>Id.</u> at 42-43).  Plaintiff testified that he completed the eleventh grade and did not obtain his GED,[2] but he is able to read and write, perform simple addition and subtraction, count money, and make change.  (<u>See</u> <u>id.</u> at 44).  Plaintiff has a driver's license and is able to drive.  (<u>Id.</u> at 45).  Plaintiff last worked as a landscaper from 2015 to 2018.  (<u>Id.</u> at 48-50).  He previously worked as railroad track foreman and as a welder.  (<u>Id.</u> at 51, 201).

Plaintiff testified that he is unable to work primarily because of his "back and [his] neck" and because of "headaches"

---

[2] Plaintiff reported during a consultative mental examination in September 2018 that he completed the twelfth grade and graduated from Christ Academy in 1995.  (Doc. 13 at 263).

that he believes are "related to [his] neck problem."   (Id. at 53).   The record reflects that Plaintiff was involved in a motor vehicle accident on October 31, 2018,[3] and he subsequently complained of radiating lower back pain, neck pain, and left shoulder soreness.   (Id. at 274).   Plaintiff's lower back has been treated with medication, a TENS unit, a back brace, injections, a radiofrequency thermocoagulation ablation ("RFA"), and physical therapy.[4]   (See, e.g., id. at 46-47, 54-55, 278, 282, 298, 305, 308-09, 312, 347).   Plaintiff's neck and cervicogenic headaches have been treated with medication, a neck brace, and injections.   (Id. at 45-47, 54, 298, 300-01, 343, 345, 368).

## IV.   **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one.   The Court's review is limited to determining (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the correct legal standards

---

[3] Plaintiff's orthopedic records state that he was "involved in a motor vehicle accident on 10/31/2018 where [Plaintiff] was a restrained driver who was t-boned." (Doc. 13 at 274).   Likewise, Plaintiff told a consultative medical examiner on February 11, 2020 that he was diagnosed with disc problems in his lower back after being injured in a 2018 motor vehicle accident.   (Id. at 333).   However, at his consultative mental examination on February 17, 2020, it was noted that "[l]ast year [Plaintiff] was hit in the back when he was *operating a machine* and now he has chronic back problems."   (Id. at 337 (emphasis added)).

[4] Although there are references to Plaintiff undergoing physical therapy, the administrative transcript does not contain physical therapy records.   (See Doc. 13).

were applied.[5]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir.
1990).   A court may not decide the facts anew, reweigh the
evidence, or substitute its judgment for that of the Commissioner.
Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).   The
Commissioner's findings of fact must be affirmed if they are based
upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235
(11th Cir. 1991).  "Substantial evidence is more than a scintilla,
but less than a preponderance" and consists of "such relevant
evidence as a reasonable person would accept as adequate to support
a conclusion."  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th
Cir. 1983).   In determining whether substantial evidence exists,
a reviewing court must consider the record as a whole, taking into
account evidence both favorable and unfavorable to the
Commissioner's decision.  Chester v. Bowen, 792 F.2d 129, 131 (11th
Cir. 1986) (per curiam); Short v. Apfel, 1999 U.S. Dist. LEXIS
10163, at *4 (S.D. Ala. June 14, 1999).

**V.    Statutory and Regulatory Framework**

An  individual  who  applies  for  Social  Security  disability
benefits  must  prove  his  disability.   See  20  C.F.R.  §
404.1512(a)(1).  Disability is defined as the "inability to engage
in any substantial gainful activity by reason of any medically
determinable physical or mental impairment which can be expected

---

[5] This Court's review of the Commissioner's application of legal
principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th
Cir. 1987).

to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); see also 20 C.F.R. § 404.1505(a). The Social Security regulations provide a five-step sequential evaluation process for determining whether a claimant has proven his disability. See 20 C.F.R. § 404.1520.

The first two steps of the evaluation require the claimant to prove that he (1) has not engaged in substantial gainful activity and (2) has a severe impairment or combination of impairments. Carpenter v. Comm'r of Soc. Sec., 614 F. App'x 482, 486 (11th Cir. 2015) (per curiam)[6]; see 20 C.F.R. § 404.1520(a)(4)(i)-(ii). If the claimant does not meet his burden on either of these two inquiries, he will be found not disabled. Carpenter, 614 F. App'x at 486; see 20 C.F.R. § 404.1520(a)(4)(i)-(ii), (b), (c). If the claimant meets his burden at both of the first two steps, the evaluation proceeds to step three, where if the claimant proves that his impairment or combination of impairments meets or equals a listed impairment and satisfies the duration requirement, he will automatically be found disabled. Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004); see 20 C.F.R. §

---

[6] Federal Appendix cases are unpublished Eleventh Circuit opinions and are not considered binding precedent, but they may be cited as persuasive authority. See 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."); Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

404.1520(a)(4)(iii), (d).

If the claimant cannot prevail at the third step, the evaluation proceeds to step four, where the claimant must prove an inability to perform his past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986); see 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f). At the fourth step, the ALJ must determine the claimant's residual functional capacity ("RFC"). Phillips, 357 F.3d at 1238. A claimant's RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite his impairments. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see 20 C.F.R. § 404.1545(a). The RFC assessment is used to determine whether a claimant can perform past relevant work at step four, and if necessary, to determine whether a claimant can adjust to other work at step five. Phillips, 357 F.3d at 1238; see 20 C.F.R. § 404.1520(e).

If the claimant meets his burden at step four, the burden temporarily shifts to the Commissioner to prove at step five that the claimant is capable of performing other work that exists in significant numbers in the national economy given the claimant's RFC, age, education, and work experience. Goode v. Comm'r of Soc. Sec., 966 F.3d 1277, 1278-79 (11th Cir. 2020); see 20 C.F.R. § 404.1520(a)(4)(v), (g). If the Commissioner makes this showing, the burden then shifts back to the claimant to prove his inability

to perform those jobs in order to be found disabled.   <u>Goode</u>, 966 F.3d at 1279.

## VI.   **The ALJ's Findings**

In this case, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of October 31, 2018.  (Doc. 13 at 22).  The ALJ found that Plaintiff has the severe impairments of degenerative disc disease of the lumbar spine, cervical facet joint syndrome with headaches, left shoulder capsulitis/bursitis, sacroiliitis, chronic pain syndrome, gastroesophageal reflux disease, and obesity, but she determined that Plaintiff's impairments do not meet or medically equal the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).  (<u>Id.</u> at 23-24).

The ALJ found that Plaintiff has the RFC to perform a range of light work, with the following additional limitations: he can stand and walk for no more than four hours in an eight-hour workday; he can sit for no more than six hours in an eight-hour workday; he must be permitted to change positions for one to two minutes hourly for relief of postural discomfort but is able to remain on task while changing positions; he can never climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs; he can occasionally balance, stoop, kneel, crouch, and crawl; he cannot perform overhead lifting or reaching with the bilateral upper extremities; and he cannot work at unprotected

heights or around hazardous machinery. (Id. at 25-26). Based on the testimony of the VE and the record before her, the ALJ found that Plaintiff cannot perform his past relevant work as a landscaper but can perform other jobs that exist in significant numbers in the national economy, such as laundry sorter, folder, and mail clerk, non-postal. (Id. at 30-31). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 31).

**VII. Discussion**

> **1. The ALJ did not err in failing to list Plaintiff's herniated lumbar disc and radiculopathy as a discrete severe impairment at step two.**

Plaintiff first argues that the ALJ erred by failing to list his "herniated lumbar disc and radiculopathy" as a severe impairment at step two of the sequential evaluation process. (Doc. 20 at 3-7). According to Plaintiff, this omission implies that the ALJ found "that this disorder was non-severe." (Id. at 4). Having carefully reviewed the record, the Court finds that Plaintiff's claim is meritless.

First, contrary to Plaintiff's suggestion, the ALJ's decision cannot be reasonably interpreted to implicitly find Plaintiff's lumbar disc herniation and radiculopathy to be non-severe at step two. Although the ALJ's step two statement did not specifically reference Plaintiff's MRI finding of a herniated disc at L5-S1 and his complaints of radicular symptoms, the ALJ more broadly found that Plaintiff has a severe impairment involving his lumbar spine,

i.e., degenerative disc disease.  (See Doc. 13 at 23-24).  This is consistent with Plaintiff's more recent orthopedic records, which list his lower back impairment under the umbrella of lumbar facet joint syndrome,[7] with associated diagnoses of lumbar herniated disc, lumbago, and sacroiliac pain.  (See id. at 330, 342-43, 351). The ALJ also identified chronic pain syndrome and sacroiliitis as severe impairments, the latter of which is implicated in the medical records in connection with Plaintiff's radicular symptoms. (See id. at 23, 283, 290).

Assuming arguendo that the ALJ should have described Plaintiff's lumbar spine impairment in greater detail at step two, her failure to do so was harmless because it had no impact on her ultimate decision.  See, e.g., Burgos v. Acting Comm'r of Soc. Sec., 705 F. App'x 794, 801 (11th Cir. 2017) (per curiam) ("[A]n error is harmless if it does not affect the Commissioner's ultimate decision.") (citing Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983)).  Step two of the sequential evaluation process acts as a filter to eliminate claims involving no substantial impairment, and the finding of any severe impairment is sufficient to satisfy the requirement of step two.  Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).  Therefore, when an ALJ finds at

---

[7] "Facet joint syndrome is an arthritis-like condition of the spine that can be a significant source of back and neck pain. It is caused by degenerative changes to the joints between the spine bones."  https://www.mayfieldclinic.com/pe-facet.htm  (last visited Mar. 27, 2022).

least one severe impairment, the ALJ is not required to identify additional severe impairments at step two if the decision demonstrates that the ALJ properly considered all medically determinable impairments at subsequent steps. See Tuggerson-Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 951 (11th Cir. 2014) (per curiam) ("[T]he only consequence of the analysis at step two is that, if the ALJ finds no severe impairment or impairments, he should reach a conclusion of no disability."); Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (per curiam) ("Nothing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe.").

Here, the ALJ determined that Plaintiff has multiple severe impairments at step two and proceeded with the remaining steps of the sequential analysis. In her evaluation of Plaintiff's RFC, the ALJ analyzed Plaintiff's lumbar disc problems and complaints of radicular symptoms in detail. In particular, the ALJ specifically noted that Plaintiff's CT scans from November 2018 showed mild degenerative change to the lumbar spine and a normal left hip, and that Plaintiff's January 2019 lumbar spine MRI showed a bulging disc at L4-L5, loss of normal lordotic curve, and a disc herniation at L5-S1 with spinal stenosis. (Doc. 13 at 26-28; see id. at 314-15, 318-19). The ALJ also noted Plaintiff's reports of radiating pain and numbness to his lower extremities, as well as the significant reported improvement to those symptoms following

11

sacroiliac ("SI") joint and lumbar spine injections. (Id. at 27; see id. at 274, 278, 282-83, 287, 290, 294, 302, 304, 310, 329, 340). The ALJ then went on to discuss the functional limitations resulting from Plaintiff's medical issues relating to his lower back. (Id. at 28-29).

Given the foregoing, the fact that the ALJ did not list Plaintiff's herniated lumbar disc and radiculopathy as a discrete severe impairment at step two of the sequential analysis provides no basis for remand. Accordingly, Plaintiff's claim must fail.

> **2. Substantial evidence supports the ALJ's RFC assessment and evaluation of the opinion of Plaintiff's treating orthopedist.**

Plaintiff next contends that the ALJ's RFC assessment is not supported by substantial evidence because the ALJ improperly rejected the opinion of his treating orthopedist and substituted her own opinion in its place. (Doc. 20 at 7-15). Having reviewed the record at length, the Court finds that Plaintiff's claim is without merit.

The Social Security Administration revised its regulations regarding the evaluation of medical evidence for all claims filed after March 27, 2017. See 82 Fed. Reg. 5844, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132, 2017 WL 1105368 (Mar. 27, 2017)). Because Plaintiff applied for benefits in November 2019, the revised regulations apply in this case. The revised regulations direct ALJs to no longer "defer or

give specific evidentiary weight, including controlling weight,"
to any medical opinions[8] or prior administrative medical findings,[9]
including those from a treating physician.    20 C.F.R. §
404.1520c(a); see Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th
892, 896-98 (11th Cir. 2022) (finding that § 404.1520c validly
abrogated both the treating-physician rule, which required ALJs to
give substantial or considerable weight to the medical opinions of
treating physicians unless there was good cause not to do so, and
earlier Eleventh Circuit precedents applying the treating-
physician rule).[10]

---

[8] Under the current regulations, the term "medical opinion" is no
longer defined to include a diagnosis, prognosis, or a statement
reflecting a judgment about the nature and severity of an
impairment.  See 20 C.F.R. § 404.1513(a)(3).  Rather, it refers
only to a medical source's statement about what a claimant can do
despite his impairments, and whether there are any limitations in
the claimant's abilities to perform the various demands of work
and adapt to work-related conditions.  Id. at § 404.1513(a)(2).

[9] Under the current regulations, findings about medical issues made
by State agency medical and psychological consultants at a prior
level of review are deemed prior administrative medical findings.
See 20 C.F.R. § 404.1513(a)(5).

[10] Plaintiff cites several cases that considered medical opinion
evidence under earlier regulations, but he fails to recognize that
the treating-physician rule and good cause requirement that
applied in those cases does not apply in this case.  (See Doc. 20
at 9, 11-12); see also Medina v. Kijakazi, 2022 U.S. Dist. LEXIS
174483, at *20, 2022 WL 6572349, at *7 (S.D. Fla. Aug. 23, 2022)
(noting that "there is a significant difference between, on the
one hand, finding that an ALJ's rationale is insufficient to
discount an opinion that would otherwise be entitled to controlling
weight and, on the other hand, finding that an ALJ's rationale is
inadequate (applying a substantial evidence standard) to show that
an opinion entitled to no special deference is not supported"),
report and recommendation adopted, 2022 U.S. Dist. LEXIS 174079,

Instead, ALJs must "evaluate the persuasiveness" of each medical source's medical opinions or prior administrative medical findings by considering the following five factors, as appropriate: (1) supportability, (2) consistency, (3) relationship with the claimant,[11] (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding."[12]  20 C.F.R. § 404.1520c(a) & (c)(1)-(5).[13]  Supportability and consistency are the two most important factors, and ALJs are required to explain how they considered those two factors in evaluating the persuasiveness of a medical source's opinion.  Id. at § 404.1520c(a) & (b)(2). "Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a

---

2022 WL 4462056 (S.D. Fla. Sept. 26, 2022).

[11] The relationship with the claimant factor combines consideration of the following issues: length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship. 20 C.F.R. § 404.1520c(c)(3)(i)-(v).

[12] The "other factors" include, but are not limited to, the medical source's "familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  20 C.F.R. § 404.1520c(c)(5).

[13] When a single medical source provides multiple medical opinions or prior administrative medical findings, the ALJ is not required to articulate how she considered each individual opinion or finding from that source.  20 C.F.R. § 404.1520c(b)(1).  Instead, the ALJ must articulate how she considered the opinions or findings from that source together in a single analysis using the factors outlined in § 404.1520c(c)(1)-(5).  Id.

medical source's opinion and other evidence within the record."
Cook v. Comm'r of Soc. Sec., 2021 U.S. Dist. LEXIS 77456, at *6,
2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), report and
recommendation adopted, 2021 U.S. Dist. LEXIS 76591, 2021 WL
1565162 (M.D. Fla. Apr. 21, 2021). ALJs may also explain how they
considered the remaining factors, as appropriate, but they are
generally not required to do so.  20 C.F.R. § 404.1520c(b)(2).

Michael D. Gilmore, M.D., is an orthopedic surgeon who treated
Plaintiff at Panhandle Orthopaedics beginning in March 2019,
primarily for complaints relating to his lower back and neck.  On
January 19, 2021, Dr. Gilmore completed a questionnaire for
Plaintiff's disability claim, in which he provided the following
responses:

1) Based on your examinations, observation and
treatment of [Plaintiff], do you believe this
patient will experience symptoms (pain) from his
underlying medical condition?

YES ✔            NO _____

Comments: _____

2) Based on your experience as a physician, as well as
your examinations, observation and treatment of
[Plaintiff], would you expect that the performance
of a job that required him to sit or stand for
prolonged periods during an 8 hour workday would
increase the level of pain he experiences?

YES ✔            NO _____

Comments: _____

3) Based on your experience as a physician, as well as
your examinations, observation and treatment of

15

[Plaintiff], would you expect that maintaining work posture (sitting, standing, and walking) for a total of eight hours during an 8 hour workday, without the opportunity to recline, would increase the level of pain he experiences?

YES ✓                    NO _____

Comments: _____

4)   If your answer to either question 2 or 3 was "yes," would you expect the increase in his pain to be such an extent that it would cause serious distraction from job tasks and/or result in a failure to complete job tasks in a timely manner on more than an occasional basis during a typical workday and/or workweek?

YES ✓                    NO _____

Comments: _____

5)   Do you believe this patient's underlying medical conditions could reasonably be expected to cause his subjective complaints?

YES ✓                    NO _____

Please explain: <u>Lumbar facet capsulitis and cervical dystonia/headaches/facet capsulitis may flare with activities.</u>

6)   Do you believe this patient is exaggerating his complaints of pain, or malingering?

YES _____                NO ✓

Please explain: <u>Patient complaints are consistent with diagnoses.</u>

(Doc. 13 at 376-78).

In her decision, the ALJ summarized Dr. Gilmore's questionnaire and found that it "is not persuasive" because it "is not consistent with or supported by the evidence of record, to include the provider's own treatment records, which indicates the

claimant does not experience such restrictive limitations." (Id. at 27-28). The ALJ found that Dr. Gilmore's "report fails to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled" and stated that Dr. Gilmore "did not specifically address this weakness." (Id. at 28). The ALJ stated that Plaintiff "has presented with normal to mild findings on physical examinations at Panhandle Orthopaedics" and found that "these examinations would not support more restrictive limitations than assessed in the residual functional capacity, above." (Id.). The ALJ further noted that Plaintiff "has shown improvement with treatment." (Id.). Finally, the ALJ noted that she had "accounted for" Plaintiff's "allegations of pain by allowing him to change positions for 1-2 minutes hourly for relief of postural discomfort." (Id.).

For the reasons set forth below, the Court finds that the ALJ adequately explained how she considered Dr. Gilmore's opinions, and her stated reasons for finding Dr. Gilmore's opinions unpersuasive are supported by substantial evidence.

With regard to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or

prior administrative medical finding(s) will be." 20 C.F.R. §
404.1520c(c)(1). Here, the ALJ correctly recognized that Dr.
Gilmore's opinion was not persuasive because he provided little or
no supporting explanations and cited no objective medical evidence
to support his conclusions. Instead, Dr. Gilmore's conclusions
were primarily rendered by checkmark on a counsel-supplied form
designed to elicit "yes" or "no" responses. See Ferguson v.
Astrue, 2012 U.S. Dist. LEXIS 139135, at *31, 2012 WL 4738857, at
*10 (N.D. Ala. Sept. 27, 2012) (finding good cause for according
little weight to opinions provided on a form very similar to Dr.
Gilmore's questionnaire in this case, in part because the opining
doctor "prepared his assessment on counsel-supplied forms, with
conclusory questions designed to elicit 'yes' or 'no' responses
and framed to support the claimant's position"). "In the context
of disability analysis, such forms are considered 'weak evidence
at best.'" Chaney-Everett v. Astrue, 839 F. Supp. 2d 1291, 1304
(S.D. Fla. 2012) (quoting Mason v. Shalala, 994 F.2d 1058, 1065
(3d Cir. 1993)).[14]   Given the vague, general, and leading nature

---

[14] See also Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 903
(11th Cir. 2011) (per curiam) (stating that the Appeals Council
"was free to give little weight to the conclusory assertions"
contained in medical questionnaires completed by the claimant's
health care providers "because they merely consisted of items
checked on a survey, with no supporting explanations"); Hammersley
v. Astrue, 2009 U.S. Dist. LEXIS 92697, at *20, 2009 WL 3053707,
at *6 (M.D. Fla. Sept. 18, 2009) ("[C]ourts have found that check-
off forms . . . have limited probative value because they are
conclusory and provide little narrative or insight into the reasons
behind the conclusions."); Chaney-Everett, 839 F. Supp. 2d at 1304
(finding that internist's questionnaire "warranted discounted

18

of the questions posed and the lack of supporting evidence or explanation provided with the answers, Dr. Gilmore's questionnaire had little probative value.

Furthermore, the sparse explanations Dr. Gilmore did provide were of little assistance in the disability analysis. Dr. Gilmore's equivocal statement that Plaintiff's "[l]umbar facet capsulitis and cervical dystonia/headaches/facet capsulitis may flare with activities" is vague, speculative, and uncertain. See Sanders v. Colvin, 2017 U.S. Dist. LEXIS 4447, at *17 n.6, 2017 WL 125035, at *6 n.6 (S.D. Ala. Jan. 12, 2017) ("The ALJ's stated reason for rejecting Dr. Baliog's opinion in this regard is compelling particularly in light of the very 'speculative' and 'uncertain' nature of that opinion (see Tr. 409 (Baliog indicating only that plaintiff's rheumatoid arthritis 'may' cause limitation))."); Randle v. Colvin, 2016 U.S. Dist. LEXIS 186136, at *4, 2016 WL 7437143, at *2 (M.D. Fla. Jan. 22, 2016) (finding that a doctor's opinion qualified with the words "probably" and "may cause" "reasonably appears speculative on its face").

Dr. Gilmore's unelaborated statement that Plaintiff's "complaints are consistent with diagnoses" provides little support for his conclusion that Plaintiff is not exaggerating or

---

weight because it consists entirely of fill-in-the-blank and check-box answers, and it is not accompanied by any thoroughly written report, citation to treatment notes, or substantive explanation").

malingering.  Significantly, the checkmarks and brief comments in Dr. Gilmore's questionnaire do not specify any functional limitations caused by Plaintiff's impairments and do not indicate what Plaintiff can still do despite his impairments.  See Chaney-Everett, 839 F. Supp. 2d at 1304 ("Dr. Bessega's reference to Claimant's diagnosis and self-reported symptoms are not determinative of disability; instead, it is the functional limitations from an impairment that are critical."); Francis v. Astrue, 2011 U.S. Dist. LEXIS 152514, at *31, 2011 WL 7111553, at *11 (M.D. Fla. Nov. 16, 2011) (finding that the ALJ could properly discount opinions "that certain work situations 'may be overwhelming' or 'could cause problems' for Plaintiff, or 'may significantly interfere with [her] ability to function on a daily basis[,]'" because "these opinions are inconclusive and do not define the extent of restrictions on Plaintiff's functional abilities"), report and recommendation adopted, 2012 U.S. Dist. LEXIS 10578, 2012 WL 260157 (M.D. Fla. Jan. 30, 2012).  Given the foregoing, the ALJ did not err in finding that Dr. Gilmore's questionnaire lacked supportability.

Substantial evidence also supports the ALJ's finding that Dr. Gilmore's opinions are not consistent with the evidence of record, including his own treatment records.  As an initial matter, there is no question that Dr. Gilmore's records reflect certain repeated abnormal physical examination findings pertaining to Plaintiff's lumbar spine and left hip/SI joint, including mildly antalgic gait,

limited lumbar spine range of motion, muscle spasm, atrophy, edema, swelling/effusion, tenderness, positive compression tests (SI joint), positive distraction tests (SI joint), positive FABER tests, and positive Gaenslen's tests. (See Doc. 13 at 275-78, 283, 286, 293-94, 302-04, 310-11, 329-30, 341-42, 351, 360, 372). The report from Plaintiff's February 2020 consultative medical examination with Charles M. Eddins, M.D., likewise reflects that Plaintiff's lumbar spine range of motion was limited by pain, and that Plaintiff was able to squat only halfway to the floor. (Id. at 334).

However, as the ALJ noted, Dr. Gilmore's examinations also revealed a number of normal or mild findings, such as normal pulses and normal sensation in the lower extremities, normal coordination, and minimally decreased (4/5) lower extremity strength. (Id. at 27, 275-78, 284, 286, 291, 293, 302-03, 310-11, 329-30, 341-42, 360, 372). Plaintiff's orthopedic records also reflect other normal examination findings relating to his lower back and left hip/SI joint, including normal lumbar spine stability, normal active deep tendon reflexes, normal posture, no antalgic gait, normal lumbar spine range of motion, normal (5/5) strength in the lower extremities, normal muscle tone in the lower extremities, negative straight leg raise tests, negative femoral stretch tests, negative Stork tests, negative FABER tests, negative distraction tests, negative compression tests, and

negative Gaenslen's tests.   (Id. at  275-76, 284, 291, 293, 302-03, 310-12, 329-30, 342, 360-61, 372-73).

The orthopedic records also reflect that after receiving a lumbar epidural steroid injection in September 2019, Plaintiff was "examined for weakness in the lower extremities by testing *repetitive deep knee bends*, toe raises, and heel raises.  (Id. at 308) (emphasis added).   "No weakness was found" during this examination, and there were "no sensory deficits in the lumbar dermatomes."   (Id.).   And, Dr. Eddins found no cyanosis or edema of the extremities, normal motor strength throughout all extremities, full range of motion in all extremities except for range of motion of 100 degrees of the left shoulder, and that Plaintiff's heel-to-toe walking was "okay."   (Id. at 334).

Notably, at a consultative medical examination with Caleb Yongkuma, M.D., on September 26, 2018, approximately one month *before* the motor vehicle accident that Dr. Gilmore opined was the cause of Plaintiff's lumbar spine injuries, the following was noted:

> He also states that he has been having pain in his left lower back with pain shooting down his left leg.  He started having pain in 2016.  He states that the pain is dull and come[s] on and off. [H]e states that the cause of the back pain is unknown.  He was seen and he had an MRI and he was told he had a herniated disc and that needed repair.

(See id. at 267, 354).  Despite Plaintiff's reports of lower back pain, left-sided radiculopathy, and a herniated disc, Plaintiff's physical examination revealed normal gait with no ataxia; normal

squatting; normal heel-to-toe walk; normal tandem walk; normal motor strength; essentially normal sensation; normal reflexes; no back spasms, deformities, swelling, or abnormalities; and an "essentially unremarkable" range of motion evaluation.  (Id. at 268-69).  Dr. Yongkuma noted that Plaintiff's evaluation showed "no specific restrictions or limitations including, sitting, standing, walking, lifting, handling objects, reading, speaking, writing and hearing." (Id. at 269).

With respect to Plaintiff's neck, the record reflects that he reported to Dr. Gilmore that his cervical spine was injured in the motor vehicle accident on October 31, 2018.  (Id. at 274).  However, Plaintiff's relevant physical examination findings throughout 2019 were entirely normal, including normal cervical spine range of motion, 5/5 strength and normal muscle tone in the neck and upper extremities, normal posture, intact sensation, and normal stability. (See id. at 275-76, 284, 291-92).  Indeed, after Plaintiff received bilateral occipital nerve blocks on July 30, 2019, the records from his last three dates of treatment with Dr. Gilmore in 2019 do not reflect any neck-related complaints or diagnoses.  (See id. at 300-06, 310-13, 329-31).  During his consultative medical examination on February 11, 2020, Plaintiff did not report a neck injury and demonstrated full flexion and extension of the cervical spine, and Dr. Eddins did not assess him with a neck impairment.  (Id. at 333-34).

When Plaintiff next returned to Dr. Gilmore nearly seven months later, on September 30, 2020, Plaintiff did complain of neck pain, and a cervical spine examination revealed grossly limited and painful range of motion, tenderness, cervical muscular atrophy, swelling, muscle spasms, edema, positive facet loading test, 4/5 upper extremity strength, normal cervical spine stability, and normal sensation of the upper extremities. (Id. at 340-41, 360). Plaintiff received bilateral Xeomin (Botox pain) injections "for cervical dystonia and headaches" on October 21, 2020. (Id. at 343, 345). Thereafter, the examination records from Plaintiff's next (and last recorded) visit to Dr. Gilmore on November 11, 2020 reflect full cervical and upper extremity range of motion, 5/5 strength in the upper extremities, and negative cervical special tests. (Id. at 372).

Although Plaintiff listed his back, neck, and headaches as his primary issues during his hearing testimony, Plaintiff's disability report also listed shoulder pain as a condition that limited his ability to work.[15] (See id. at 53, 200). Shoulder pain was among Plaintiff's chief complaints to Dr. Yongkuma in September 2018, and Plaintiff reported left shoulder pain caused

---

[15] The record reflects that Plaintiff suffered a major workplace injury in 2008 and subsequently underwent multiple surgeries, including several left shoulder surgeries between 2008 and 2012. (See Doc. 13 at 76-79, 81, 263, 267, 274). In a decision dated October 3, 2012, Plaintiff was found to be disabled as of July 2008, but Plaintiff testified that his benefits ceased after he returned to work in 2015. (Id. at 52-53, 74-83).

by the October 31, 2018 motor vehicle accident to Dr. Gilmore. (Id. at 267, 274).  The ALJ recognized Plaintiff's reports of shoulder pain, but she noted that Dr. Gilmore's examinations of Plaintiff's left shoulder were consistently normal, and Dr. Gilmore's earlier records listed Plaintiff's left shoulder tendinitis as "improved," while his more recent records reflected no left shoulder diagnosis at all.  (See id. at 26-28, 275-77, 279, 284-85, 288, 290-93, 295-96, 304-05, 312-13, 327-28, 330-31, 342-43, 360, 372).  The ALJ also cited the November 2018 CT scan of Plaintiff's left shoulder, which showed mild widening of the acromioclavicular interval likely representing an old separation, no soft tissue edema, and nothing acute.  (Id. at 26, 317).

In addition to referencing Plaintiff's "normal" or "mild" physical examination findings outlined above and determining that Plaintiff's examination findings would not support greater restrictions than those assessed in the RFC, the ALJ correctly observed that Plaintiff's conditions improved significantly with treatment.  (Id. at 28-29); see Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling.") (quotation omitted).  At his initial visit to Dr. Gilmore on March 6, 2019, Plaintiff was prescribed pain medication and a muscle relaxer, given a TENS unit, and recommended for a back brace and a left SI joint injection.  (Doc. 13 at 278-79).

Plaintiff received a left SI joint injection on March 28, 2019. (Id. at 282). When he returned to Dr. Gilmore on May 1, 2019, Plaintiff reported that the injection had "helped 100% the pain and numbness running down left posterior leg into bottom of toes." (Id. at 283). On June 19, 2019, it was again noted that the left SI joint injection "helped the pain running down left leg 100%." (Id. at 290). Dr. Gilmore's notes from both May 1, 2019 and June 19, 2019 reference "post traumatic left L5-S1 central disc, *no radic., asymptomatic*" and state that the left SI joint injection "helped a lot and is still working." (Id. at 287-88, 290 (emphasis added)).

After Plaintiff received bilateral occipital nerve blocks for headaches and cervical facet capsulitis on July 30, 2019, he did not complain of neck pain and was not treated or evaluated for or diagnosed with cervical facet joint syndrome[16] during his three orthopedic evaluations in August and October 2019. (See id. at 300-06, 310-13, 329-31). Indeed, the treatment record from Plaintiff's next orthopedic visit, on September 30, 2020, noted that Plaintiff's cervical facet joint syndrome had last been evaluated and treated on July 30, 2019. (Id. at 340).[17]

---

[16] Dr. Gilmore listed "headaches/cervical facet capsulitis" and "[c]ervical dystonia" under the diagnosis of "Facet Joint Syndrome, Cervical." (See Doc. 13 at 295, 298, 301, 340, 343, 345, 352).

[17] Plaintiff cites his own hearing testimony that he gets "severe" cervicogenic headaches "sometime, like, twice a week" and has "to go lay down and get in a dark room or something" when he gets "one

---

of 'em bad headaches," and he asserts that Dr. Gilmore "obviously believed [his] complaints in this regard since he was treating [Plaintiff] with Botox injections." (Doc. 20 at 14; see Doc. 13 at 53-54, 56-57). Plaintiff also complains that the ALJ did not specifically discuss the frequency and severity of his headaches and his alleged need to lie down in a dark room when he gets a headache. (Doc. 20 at 14). However, Dr. Gilmore did not list Plaintiff's headaches as the basis for any specific functional limitation (see Doc. 13 at 376-78), and the mere existence of an impairment does not reveal the extent to which the impairment limits a claimant's ability to work or undermine the ALJ's RFC determination. Moore v. Barnhart, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (per curiam). Moreover, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in her decision, and the ALJ's decision reflects that she considered the relevant testimony and other evidence concerning Plaintiff's headaches and found that the evidence did not support additional functional limitations related to his alleged cervicogenic headaches. (See Doc. 13 at 26-29).

Plaintiff did not list headaches (or a neck injury) in his disability report as a condition that limits his ability to work. (See id. at 200). Plaintiff's medical records contain little discussion and provide few details regarding headaches, and the records do not reflect complaints of headaches even approaching the frequency and severity of those alleged by Plaintiff at his hearing. For example, the ALJ referenced Plaintiff's unremarkable report on June 19, 2019 "that he will sometimes wake up with a headache if he tosses and turns all night" and that physical therapy had "helped the range of motion but not the headaches." (See id. at 27, 290). This was one of the few details regarding headaches in the medical record, and it directly contradicts Plaintiff's testimony that he was experiencing cervicogenic "migraines" which were worse than his current "severe" headaches "every day" before "they put [him] on Botox injections." (See id. at 53-54; see also id. at 290 (reporting 4/10 pain intensity on June 19, 2019)).

The ALJ discussed the medical evidence in detail, which reflects that examinations of Plaintiff's neck were overwhelmingly normal, that Plaintiff did not consistently complain of neck pain, that Plaintiff was not treated or evaluated for cervical facet syndrome (including "headaches/cervical facet capsulitis") between July 30, 2019 and September 30, 2020 despite having three orthopedic visits during that time, and that Plaintiff only received Botox pain injections on one occasion in October 2020. Under these circumstances, the ALJ's references to the testimony and other

Plaintiff reported worsening lower back pain on August 20, 2019 and received a left L5-S1 transforaminal epidural steroid injection on September 19, 2019. (Id. at 302, 308-09). When he returned to Dr. Gilmore for a status check on October 1, 2019, Plaintiff reported "very good relief so far" from the lumbar epidural and stated "that the numbness is less frequent and the pain is improved," although it was noted that he "does have a burning type sensation in the low back." (Id. at 310). Dr. Gilmore noted that the injection had "helped lots" and listed the status of Plaintiff's low back pain as "Resolving." (Id. at 312). On October 23, 2019, Plaintiff reported that "overall his back [was] doing better." (Id. at 329). Dr. Gilmore noted: "He reports good relief from the epidural injection on 09/09/2019 and that he only has occasional stiffness and burning when bending forward or backward." (Id.). Dr. Gilmore also noted that the "epidural stopped radiculopathy[.]" (Id. at 330). In his "Impression/Plan" from that visit, Dr. Gilmore instructed Plaintiff to "watch" his lumbar facet joint syndrome and to consider another epidural injection or an RFA if symptoms returned. (Id. at 330-31). However, the record reflects that Plaintiff did not return to Dr. Gilmore for nearly a year following this visit.

When Plaintiff next presented to Panhandle Orthopaedics on

_____

evidence concerning headaches in the RFC analysis were sufficient to show that she properly considered the relevant information concerning that impairment in determining Plaintiff's RFC.

September 30, 2020, Dr. Gilmore ordered Xeomin (Botox pain) injections for Plaintiff's "cervical dystonia and headaches," along with a back brace and a left L2-S1 facet joint RFA for Plaintiff's lumbar facet joint syndrome. (Id. at 342-43). Plaintiff received the Xeomin injections on October 21, 2020. (Id. at 345-46). The lumbosacral RFA was performed two days later. (Id. at 347-48). On the date of the RFA, Plaintiff reported a preoperative pain level of 8 and a postoperative pain level of 0. (Id. at 347). On his last recorded date of treatment of November 11, 2020, Plaintiff's sole chief complaint was low back pain, which was noted to be intermittent and 5 out of 10 on an average day. (Id. at 350). Dr. Gilmore noted that Plaintiff's back brace "partially alleviates symptoms," and that his condition was "stable" since his last visit. (Id.).

The ALJ also properly considered the prior administrative medical findings of the State agency medical reviewers, who found that Plaintiff could perform a reduced range of light work with additional postural and manipulative limitations despite the existence of a lumbar disc herniation and certain abnormal examination findings such as limited lumbar spine range of motion, swelling, atrophy, muscle spasm, tenderness to palpation, and mildly antalgic gait. (See id. at 29, 89, 92-94, 103, 106-08). The ALJ found these findings "somewhat consistent with and supported by the evidence of record, which indicates the claimant

29

would be able to perform less than a full range of light work."
(Id. at 29).  However, based on the record as a whole, the ALJ
assessed Plaintiff with more restrictive standing, walking, and
postural limitations to account for his abnormal findings on
examination and his postural discomfort.  (Id.).  In addition, the
ALJ cited Plaintiff's own reports, which reflect that he is able
to perform activities such as preparing his own meals, caring for
his children, driving a car, and shopping in stores.  (Id. at 29,
211-13).

Plaintiff's suggestion that the ALJ substituted her own
opinions for those of Dr. Gilmore by finding his opinions
unpersuasive is without merit, particularly since Dr. Gilmore's
questionnaire fails to specify Plaintiff's functional limitations
or delineate what Plaintiff can still do despite his impairments.
The Court notes that it is the ALJ's responsibility to make the
RFC determination "based upon all of the relevant evidence of a
claimant's remaining ability to do work despite [his]
impairments."  Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D.
Ala. 2000); see also Robinson v. Astrue, 365 F. App'x 993, 999
(11th Cir. 2010) (per curiam) ("We note that the task of
determining a claimant's residual functional capacity and ability
to work is within the province of the ALJ, not of doctors.").

For a court to find that an ALJ's RFC assessment is supported
by substantial evidence, the ALJ must provide "a sufficient
rationale to link substantial record evidence to the legal

conclusions reached." <u>Eaton v. Colvin</u>, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (quotations omitted).  However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." <u>Dyer v. Barnhart</u>, 395 F.3d 1206, 1211 (11th Cir. 2005) (quotation omitted).  Eleventh Circuit precedent does not require exacting detail or precision in an ALJ's decision, only that the ALJ "state with at least some measure of clarity the grounds for [the] decision." <u>Owens v. Heckler</u>, 748 F.2d 1511, 1516 (11th Cir. 1984); <u>see also</u> <u>Garcia v. Comm'r of Soc. Sec.</u>, 833 F. App'x 303, 305-06 (11th Cir. 2020) (per curiam) ("We will reverse only if the ALJ 'fails to state with at least some measure of clarity the grounds for his decision.'") (quoting <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1179 (11th Cir. 2011)).

Here, the ALJ considered Plaintiff's imaging results, examination findings, orthopedic records, consultative examination reports, and his reported activities and abilities.  The ALJ considered the nature and course of Plaintiff's medical treatment and noted his lack of emergency room treatment, his significant improvement with treatment, and his gaps in treatment, including no treatment between October 2019 and September 2020.  The ALJ also considered the prior administrative medical findings from the

State agency experts, which indicated that Plaintiff could perform a reduced range of light work. The ALJ further considered Plaintiff's allegations of pain and other symptoms, including his reports of pain when sitting for long periods and then standing, and accounted for them by limiting Plaintiff to a reduced range of light work and allowing him to change positions for one to two minutes hourly for relief of postural discomfort.[18] The ALJ's RFC analysis is not a broad rejection and it provides a sufficient link between the evidence cited and the conclusions reached. Accordingly, Plaintiff has not met his burden of showing that the RFC assessment is not supported by substantial evidence, and as a result, his claim must fail.[19]

---

[18] Plaintiff's assertion that the ALJ "created the 1 to 2 minute position change from whole cloth" is therefore without merit. (See Doc. 20 at 14).

[19] Although Plaintiff has cited evidence in the record which he claims supports a finding that he is disabled, that is, at best, a contention that the record evidence supports a different finding. That is not the standard on review. The issue is not whether there is evidence in the record that would support a different finding, but whether the ALJ's finding is supported by substantial evidence. See Figueroa v. Comm'r of Soc. Sec., 2017 U.S. Dist. LEXIS 181734, at *15, 2017 WL 4992021, at *5 (M.D. Fla. Nov. 2, 2017) ("Although Plaintiff cites to certain test results, notes, and physical therapy findings as support for her contention that 'there were objective medical findings that support the doctor's opinions about [her] limitations' . . ., this is, at best, a contention that the record could support a different finding. This is not the standard on review. The issue is not whether a different finding could be supported by substantial evidence, but whether this finding is.") (emphasis in original).

### 3.   Substantial evidence supports the ALJ's evaluation of Plaintiff's subjective complaints.

Last, Plaintiff argues that the ALJ erred in her evaluation of his subjective complaints. (Doc. 20 at 15-19). Specifically, Plaintiff asserts that the ALJ erred in drawing a negative inference from his long gap in treatment without further information and in finding that his daily activities undermine the supportability of his allegations regarding his symptoms. (Id. at 17-19). Having reviewed the record at length, the Court finds no basis for remand.

A claimant's statements of pain or other subjective symptoms alone are insufficient to establish disability. 20 C.F.R. § 404.1529(a); Social Security Ruling 16-3p ("SSR 16-3p"), 81 Fed. Reg. 14166, 14167 (Mar. 16, 2016). Rather, when a claimant attempts to establish disability based on testimony of pain and other symptoms, he must satisfy two parts of a three-part "pain standard" that requires (1) evidence of an underlying medical condition, and (2) either (a) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (b) evidence establishing that the objectively determined medical condition can reasonably be expected to give rise to the alleged pain. See Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam)).

"If the objective medical evidence does not confirm the severity of the claimant's alleged symptoms but the claimant establishes that he has an impairment that could reasonably be expected to produce her alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's alleged symptoms and their effect on his ability to work." Spears v. Berryhill, 2017 U.S. Dist. LEXIS 160385, at *16, 2017 WL 4340508, at *6 (N.D. Ala. Sept. 29, 2017); see 20 C.F.R. § 404.1529(c); SSR 16-3p, 81 Fed. Reg. 14166 at 14168. "In doing so, the ALJ considers all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and [his] doctors." Strickland v. Comm'r of Soc. Sec., 516 F. App'x 829, 831 (11th Cir. 2013) (per curiam) (citing 20 C.F.R. § 404.1529(c)(1)-(2)); see also SSR 16-3p, 81 Fed. Reg. 14166 at 14168.

The ALJ may also consider other factors set forth in the regulations, including a claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; any precipitating or aggravating factors; the type, dosage, effectiveness, and side effects of medication; any treatment other than medication; other measures used by the claimant to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. Strickland, 516 F. App'x at 831-32 (citing 20 C.F.R. § 404.1529(c)(3)); see also SSR 16-3p, 81

Fed. Reg. 14166 at 14169-70.   The ALJ must then examine the claimant's statements about the intensity, persistence, and limiting effects of symptoms in relation to all other evidence and consider whether they are consistent with the record as a whole. Hargress v. Soc. Sec. Admin., Comm'r, 883 F.3d 1302, 1308 n.3 (11th Cir. 2018) (per curiam) (citing SSR 16-3p, 81 Fed. Reg. 14166 at 14170); see also 20 C.F.R. § 404.1529(c)(4).

The ALJ is not required to accept a claimant's allegations of pain merely because the claimant has established that his impairment could reasonably be expected to produce her alleged symptoms.   See Wilson, 284 F.3d at 1225-26.   However, if the ALJ decides not to credit a claimant's statements about his pain, "the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious" as to the finding.   Strickland, 516 F. App'x at 832 (citing Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).   Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true.   Holt, 921 F.2d at 1223.   When the ALJ's reasons for discrediting a claimant's statements about pain or other symptoms are clearly articulated and supported by substantial evidence in the record, a reviewing court will not disturb the ALJ's findings.   Foote, 67 F.3d at 1562; see also Werner v. Comm'r of Soc. Sec., 421 F. App'x 935, 939 (11th Cir. 2011) (per curiam) ("The question is not . .

. whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

Here, the ALJ followed the process outlined above in evaluating Plaintiff's allegations of pain and other symptoms. The ALJ noted the allegations in Plaintiff's reports and hearing testimony and summarized the medical evidence of record, including Plaintiff's orthopedic treatment records, radiology reports, and consultative examination reports, in detail. (Doc. 13 at 26-28). The ALJ evaluated the medical opinion evidence and prior administrative medical findings and outlined Plaintiff's reported activities and abilities. (Id. at 27-29). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, but that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Id. at 26).

After making this finding and reviewing the medical evidence, the ALJ explained that Plaintiff's ability to perform a reduced range of light work was "supported by the claimant's treating records, which documents the claimant's gaps in recurrent treatment for his alleged impairments, to include no treatment between October 2019 and September 2020, improvement with treatment, no emergency room treatment during the relevant period,

and generally normal to mild findings on physical examinations."
(Id. at 29).  The ALJ found that "[s]uch extensive stability is
not consistent with the claimant's initial allegations."  (Id.).

The ALJ also noted Plaintiff's reports that "he was able to
prepare his own meals, care for his children, drive a car, and
shop in stores," and that "he did not need any special reminders
to take care of personal needs or grooming, or help or reminders
to take medication."  (Id.).  The ALJ found that Plaintiff's
"ability to participate in such activities diminishes the
supportability of the claimant's allegations of functional
limitations."  (Id.).

The ALJ further stated that "the overall evidence of record
is inconsistent with the claimant's allegations regarding the
intensity, duration, and persistence of his symptomatology," and
"with the claimant's allegations of totally incapacitating
symptomatology." (Id.).  The ALJ concluded that the RFC assessment
was "supported by the overall evidence of record, including
objective evidence, opinion evidence, and the claimant's
indications and admissions as to activities and abilities." (Id.).

Plaintiff takes issue with the ALJ's observation regarding
the eleven-month gap in his treatment and asserts that the ALJ
should not have drawn "such negative inferences" from the treatment
gap without inquiring into the reasons for his lack of treatment.
(Doc. 20 at 17-18).  For support, he relies on SSR 16-3p, which

provides, in pertinent part:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. **We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.**

SSR 16-3p, 81 Fed. Reg. 14166 at 14170 (emphasis added).

Plaintiff posits that "it is possible" that he could not afford treatment between October 2019 and September 2020, and he notes that his treatment gap coincided with the emergence of COVID-19. (Doc. 20 at 17-18). However, Plaintiff studiously avoids representing that he had no insurance, could not afford treatment, or was unable to obtain treatment due to the COVID-19 emergency, and the Court has found nothing in the record to support such suppositions. Nor do Plaintiff's posited reasons explain why he could not have obtained emergency care during this period if necessary, or how COVID-19 prevented him from obtaining treatment prior to March 2020.

In any event, remand based on lack of inquiry into the reasons for a claimant's failure to seek treatment is required only when the ALJ's determination of non-disability relies "primarily if not exclusively" on a claimant's failure to seek treatment. Henry v. Comm'r of Soc. Sec., 802 F.3d 1264, 1268 (11th Cir. 2015) (per

curiam) (citing Ellison v. Barnhart, 355 F.3d 1272, 1275 (11th Cir. 2003) (per curiam)); see McConnell v. Kijakazi, 2022 U.S. Dist. LEXIS 39449, at *20, 2022 WL 672151, at *7 (M.D. Ala. Mar. 7, 2022) (finding that the ALJ did not reversibly err in failing to question claimant regarding the reasons for her gap in treatment because the ALJ "did not primarily or exclusively rely on" the treatment gap in discounting claimant's subjective testimony, but instead "also properly relied on the objective medical evidence and [claimant's] daily activities").

Here, the ALJ found that Plaintiff's subjective allegations were not fully consistent with his improvement with treatment, lack of emergency room treatment, examination findings, and the reported activities and abilities, all of which are outlined in detail in the previous section of this order. Furthermore, the Court notes that Plaintiff went even longer than eleven months in not receiving treatment or evaluation for cervical facet joint syndrome (including cervicogenic headaches) and left shoulder tendinitis, and these additional periods (beyond the eleven-plus months in which Plaintiff received no treatment at all) cannot be explained by either inability to afford treatment or disruptions caused by COVID-19. And, there is no indication that the gap in treatment was a controlling factor in the ALJ's evaluation of Plaintiff's subjective complaints. Accordingly, the ALJ did not err by considering Plaintiff's treatment history as one of a number

of factors in the evaluation of his subjective allegations.

Plaintiff also challenges the ALJ's finding that his activities and abilities, including preparing meals, caring for his children, driving a car, and shopping in stores, undermined the supportability of his reports of debilitating symptoms. Plaintiff points out that "'participation in everyday activities of short duration, such as housework or fishing' does not disqualify a claimant from disability." (Doc. 20 at 18 (quoting Lewis, 125 F.3d at 1441)). While the Court agrees that Plaintiff's reported activities alone are insufficient to contradict his statements regarding his symptoms, the ALJ was permitted to "consider them as a factor in her subjective-symptom of [Plaintiff's] pain testimony." See McConnell, 2022 U.S. Dist. LEXIS 39449, at *21, 2022 WL 672151, at *8; see also 20 C.F.R. § 404.1529(c)(3)(i); SSR 16-3p, 81 Fed. Reg. 14166 at 14169 (listing "[d]aily activities" as a factor to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms). The ALJ reasonably found that Plaintiff's reported activities were not entirely consistent with his reports of debilitating pain and other symptoms. Thus, the ALJ did not err in relying, in part, on Plaintiff's daily activities in finding that Plaintiff's subjective allegations regarding the intensity, duration, and persistence of his symptoms were not entirely consistent with the evidence of record.

40

Contrary to Plaintiff's assertion, the ALJ considered the appropriate factors and articulated reasons for discounting Plaintiff's subjective symptom testimony which have substantial evidentiary support. Accordingly, Plaintiff's claim must fail.

**VIII.    <u>Conclusion</u>**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED.**

**DONE** this **28th** day of **March, 2023.**

<u>/s/ SONJA F. BIVINS</u>
UNITED STATES MAGISTRATE JUDGE
